IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MINISTER ELBERT MOORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:14-cv-2197-G-BN |
| | § | |
| JOHN WILLIE COLLINS, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference. The undersigned issues the following findings of fact, conclusions of law, and recommendation that Plaintiff's claims should be dismissed for lack of subject matter jurisdiction, and, even if the Court has jurisdiction over any of Plaintiff's federal-law claims, the Court should dismiss those claims and should decline to exercise jurisdiction over Plaintiff's state-law claims.

**Background**

This is the most recent of several judicial proceedings concerning the ownership of a church's real property. Plaintiff Elbert Moore, who is proceeding *pro se*, is the former minister of New Testament Church of Christ, Inc., formerly Sunnyvale Church of Christ, Inc., in Dallas, Texas. Seeking to represent both New Testament Church of Christ, Inc. and himself individually, Plaintiff sued Defendants John Willie Collins,

Superior Dynamics, Inc., Sunnyvale Limited Partnership, Inc., William Scott Wyatt, Vinson & Elkins Law Firm, Joel Ross, Melodee Armstrong, Judge Tonya Parker, Mark Mosley, Lonnie Woods, William Mahomes, First American Title Insurance Company, Seth Dockery, Valerie A. Hicks, Republic Title Insurance Company, Jill Lydic, Prosperity Bank, William Carter, Donald Hicks, J. McDonald Williams, and Jane E. Brown, for "fraud, conspiracy to commit fraud, forgery, organized crime, and illegal taking of church real estate property." Plaintiff also sought damages for negligence. *See* Dkt. No. 3. Plaintiff subsequently filed an amended complaint raising the same claims but removing New Testament Church of Christ, Inc. as a party. *See* Dkt. No. 11.

In his amended complaint, Plaintiff asserts that the church bond program was in default. Plaintiff entered into an agreement with Defendant Collins in which Collins agreed to make a loan payment to bring the bond payment current. Two companies allegedly owned or controlled by Collins – Sunnyvale Limited Partnership, Inc. and Superior Dynamics, Inc. – subsequently claimed to be the legal owners of the church property through (1) a church bond assumption agreement dated March 23, 2000, (2) purchase of the church property from Sunnyvale Church of Christ, Inc. on April 24, 2000, and (3) a foreclosure sale purchase of the church property on August 7, 2001. Plaintiff alleges that Collins, Sunnyvale Limited Partnership, Inc. and Superior Dynamics, Inc. never had a legal deed or held legal title to the church's real property because they worked together to acquire the property through fraud, conspiracy to commit fraud, and forgery. Plaintiff makes no specific allegations concerning the other defendants in his amended complaint. *See id.*

Plaintiff lists five related lawsuits in his amended complaint. *See id.* at 4-5. The undersigned takes judicial notice of the opinion of the state appellate court in one of those lawsuits, *Moore v. Sunnyvale Ltd. P'ship*, No. 05-12-00602-CV, 2013 WL 3554233, at *1 (Tex. App. – Dallas July 11, 2013, pet. denied), for purposes of considering the nature of the courts' findings and rulings in that matter. According to that opinion, Sunnyvale Limited Partnership, Inc. purchased real property from Sunnyvale Church of Christ, Inc. (the "church"). According to the opinion of the Dallas Court of Appeals, the church transferred the property to Sunnyvale Limited Partnership, Inc. by a special warranty deed on April 13, 2000. According to the opinion of the Dallas Court of Appeals, Plaintiff was president and minister of the church, and his signature was on the special warranty deed transferring the property. According to the opinion of the Dallas Court of Appeals, at or near the time of the conveyance, Sunnyvale Limited Partnership, Inc. executed an assumption agreement to assume payment of the balance owed on bonds by the church to Colonial Trust Company, but Sunnyvale Limited Partnership, Inc. defaulted on the assumption agreement, and Colonial Trust Company initiated foreclosure proceedings and a lawsuit, which was settled and Final Judgment was entered on January 7, 2002. According to the opinion of the Dallas Court of Appeals, meanwhile, after the church conveyed the property to Sunnyvale Limited Partnership, Inc., Plaintiff began filing documents in the county clerk's office that purported to create encumbrances upon or interests in and cloud title to the property. *See id.*

Another lawsuit referenced in Plaintiff's amended complaint was brought in

small claims court in 2010. *See* Dkt. No. 11 at 4. Defendant Collins sued Plaintiff for unlawfully removing commercial signs, destroying and changing locks on doors, and entering the property without authorization. *See* Dkt. No. 32-1 at 91. Plaintiff's answer to the lawsuit was that the church was not for sale. *See id.* at 92. Collins subsequently non-suited the small claims lawsuit. *See id.* at 93.

Sunnyvale Limited Partnership, Inc., Superior Dynamics, Inc., and John W. Collins brought suit in the 116th Judicial District Court of Dallas County, Texas against Plaintiff to quiet title, enjoin trespass to real property, and for private nuisance. *See Moore*, 2013 WL 3554233, at *1; *see also* Dkt. No. 32 at 10-23 (Petition). The trial court concluded that Plaintiff's actions improperly clouded title to the property because neither Plaintiff nor the church was the proper owner of the property. The trial court also enjoined Plaintiff from taking certain actions, including filing any documents in the public record that encumbered, contested, or interfered with Sunnyvale Limited Partnership, Inc., Superior Dynamics, Inc., and John W. Collins' ownership of the property. *See Moore*, 2013 WL 3554233, at *1; *see also* Dkt. No. 32 at 24-26 (Judgment); Dkt. No. 32 at 33-35 (incomplete copy of Findings of Fact and Conclusions of Law). The trial court's judgment was affirmed on appeal. *See Moore*, 2013 WL 3554233, at *5.

The undersigned *sua sponte* questioned whether this Court has subject matter jurisdiction over Plaintiff's claims because there did not appear to be either a federal question or diversity of citizenship and ordered Plaintiff to file a brief explaining the basis for the Court's subject matter jurisdiction and to show cause why this case should not be dismissed for lack of subject matter jurisdiction. *See* Dkt. No. 10. In his response

to the show cause order, Plaintiff argues that this Court has subject matter jurisdiction because there was an unconstitutional taking of the church's real property and because he was denied due process and equal protection. *See* Dkt. No. 12 at 7-11; *see also* Dkt. Nos. 13, 24, 31, 38. Plaintiff also asserts that there is diversity jurisdiction. *See* Dkt. No. 12 at 8; *see also* Dkt. Nos. 13 & 24.

Defendant Judge Tonya Parker filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Dkt. No. 19. Judge Parker asserts that Plaintiff's claims against her should be dismissed under Rule 12(b)(6) because she is entitled to judicial immunity and sovereign immunity and under 12(b)(1) because Plaintiff's suit is a collateral attack on a state-court determination, which is barred under the *Rooker-Feldman* doctrine.

On October 6, 2014, Plaintiff filed an application for a temporary restraining order and temporary injunction to enjoin a substitute trustee's sale of the property on October 7, 2014. *See* Dkt. No. 46 at 1-8, 27-29.

## Legal Standards

Federal courts have an independent duty to examine their own subject matter jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("[A]ny federal court may raise subject matter jurisdiction *sua sponte.*"). Federal courts "are empowered to hear only those cases that are within the constitutional grant of judicial power, and that have been entrusted to them by a jurisdictional grant enacted by Congress." *Sarmiento v. Texas Bd. of Veterinary Med. Examiners By & Through Avery*, 939 F.2d 1242, 1245 (5th

Cir. 1991). A federal court's jurisdiction is limited, *id.*, and, unless otherwise provided by statute, federal courts generally may hear a case of this nature only (1) if it involves federal questions arising under the Constitution, laws, or treaties of the United States or (2) where diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs, *see* 28 U.S.C. §§ 1331, 1332.

As to federal question jurisdiction under 28 U.S.C. § 1331, "'[f]ederal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit.'" *Highland Park Presbyterian Church, Inc. v. Grace Presbytery, Inc.*, No. 3:13-cv-3813-B, 2013 WL 5538716, at *2 (N.D. Tex. Oct. 7, 2013) (citing *Martin v. Wilkes-Barre Pub. Co.*, 567 F.Supp. 304, 308 (M.D. Pa. 1983), and quoting *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579 (1904)). In determining substantiality, a court must ask "whether there is any legal substance to the position the plaintiff is presenting." *Southpark Square Ltd. v. City of Jackson*, 565 F.2d 338, 342 (5th Cir. 1977). The Court is authorized to consider evidence beyond the complaint and to make appropriate factual determinations when ruling on its subject matter jurisdiction. *See Clark v. Tarrant Co., Tex.*, 798 F.2d 736, 741 (5th Cir. 1986).

The party seeking to invoke a federal court's jurisdiction must prove that jurisdiction is proper, *see Boudreau v. United States*, 53 F.3d 81, 82 (5th Cir. 1995), and, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action," FED. R. CIV. P. 12(h)(3).

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must

-6-

"accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

-7-

## Analysis

I.    _Rooker-Feldman_ Doctrine

The issue of whether Plaintiff Moore owns the church property was determined in the suit to quiet title, and, according to the Dallas Court of Appeals, the trial court determined that he did not. _See Moore_, 2013 WL 3554233, at *1. Plaintiff raised the same arguments in the Dallas Court of Appeals that he now tries to raise in this court. According to the opinion of the Dallas Court of Appeals, those issues included whether the property was taken by Defendant Collins by fraud, conspiracy, and deception; whether the Plaintiff or the church had legal ownership of the property at the time of the suit to quiet title; whether signatures on the documents conveying the church property to Sunnyvale Limited Partnership, Inc. were forged; whether Defendants' alleged forgery, fraud, deception, and conspiracy were criminal acts; whether Defendants Sunnyvale Limited Partnership, Inc. and Superior Dynamics, Inc. were precluded from doing business in Texas, and, if so, the affect of that preclusion on their ability to obtain legal title to the property; whether Defendants Collins, Sunnyvale Limited Partnership, Inc. and Superior Dynamics, Inc. acted in concert to take and illegally deprived Plaintiff and the church of the property for over thirteen years; and whether the trial court proceedings, including the fact that Plaintiff appeared _pro se_, resulted in a taking of the church's real property in violation of Plaintiff's constitutional rights. _See id._ at *2-*4. The Dallas Court of Appeals affirmed the trial court's judgment. _See id._ at *4-*5.

Under the _Rooker-Feldman_ doctrine, "a party losing in state court is barred from

seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates his federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994). "[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000). Errors in state cases should be reviewed and settled through the state appellate process. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923).

The *Rooker-Feldman* jurisdictional bar is confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting the federal court's review and rejection of those judgments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Within these confines, "litigants may not obtain review of state court actions by filing complaints about those actions in lower federal courts cast in the form of civil rights suits." *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986).

Although Judge Parker's motion to dismiss raised this doctrine as an alternative argument, *see* Dkt. No. 19 at 4, the *Rooker-Feldman* doctrine concerns the Court's subject-matter jurisdiction and, thus, must be considered, *see Burge v. Parish of St. Tammany*, 187 F.3d 452, 465-66 (5th Cir. 1999); *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1297 (5th Cir. 1985); *see generally Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In this case, Plaintiff's claims – and certainly the federal-law claims against Judge Parker – all stem from actions in an earlier state court proceeding. While cast as

civil rights and constitutional claims, Plaintiff's claims amount to an impermissible attack on rulings or judgments in state court actions involving Plaintiff. *See generally Truong v. Bank of America, N.A.*, 717 F.3d 377, 381-85 (5th Cir. 2013). And any claim for relief that Plaintiff brings that would necessarily entail reversal of a state court's judgment or that asserts as a legal wrong an allegedly erroneous decision by a state court and seeks relief from a state court judgment based on that decision also runs afoul of the *Rooker-Feldman* doctrine. *See id.* at 382-83 & n.3.

Accordingly, this Court lacks subject-matter jurisdiction to hear Plaintiff's claims under the *Rooker-Feldman* doctrine insofar as they challenge state court decisions in particular cases arising out of judicial proceedings and invite this Court's review and rejection of those decisions or judgments, insofar as Plaintiff's claims seek relief that would necessarily entail reversal of the state courts' judgments, and insofar as Plaintiff's claims assert as a legal wrong an allegedly erroneous decision by a state court and seeks relief from a state-court judgment based on that decision.

II.    Federal-Law Claims

Even to the extent that the *Rooker-Feldman* doctrine does not bar jurisdiction over Plaintiff's claims, the Court lacks jurisdiction over Plaintiff's federal-law claims.

A.    Takings and Due Process Clause Claims

Federal question jurisdiction under 28 U.S.C. § 1331 "exists when 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 172 (5th Cir. 2009) (quoting

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)). Plaintiff contends that there is a federal question because he claims there was an unconstitutional taking of the church's real property and he was deprived of the church's real property without due process of law.

The Takings Clause of the Fifth Amendment of the United States Constitution prohibits the taking of private property for public use without just compensation. *See* U.S. CONST. Amend. V; *see also Chicago, B. & Q.R. Co. v. City of Chicago*, 166 U.S. 226, 233-34 (1897) (incorporating the Takings Clause against the States through the Fourteenth Amendment). "The Takings Clause bars *the State* from taking private property without paying for it." *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 707, 713 (2010) (emphasis in original); *see also Single Moms, Inc. v. Montana Power Co.*, 331 F.3d 743, 746 (9th Cir. 2003) ("The United States Constitution protects individual rights only from *government* action, not *private* action." (emphasis in original)).

Likewise, "'[t]he Fourteenth Amendment prohibits the state from depriving any person of life, liberty, or property without due process of law; but it adds nothing to the rights of one citizen as against another.'" *Barrera v. Security Bldg. & Inv. Corp.,* 519 F.2d 1166, 1169 (5th Cir. 1975) (quoting *United States v. Cruikshank*, 92 U.S. 542 (1875)). "The Fourteenth Amendment 'erects no shield against merely private conduct, however discriminatory or wrongful.'" *Id.* (quoting *Shelley v. Kraemer*, 334 U.S. 1 (1946)); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982) ("[T]he Fourteenth Amendment, which prohibits the states from denying federal constitutional rights and

which guarantees due process, applies to acts of the *states*, not to acts of private persons or entities." (emphasis added)).

Based on Plaintiff's amended complaint and other documents filed by Plaintiff in this case, Defendants Collins, Sunnyvale Limited Partnership, Inc., and Superior Dynamics, Inc. allegedly acquired the church property through fraud, conspiracy to commit fraud, and forgery. *See* Dkt. Nos. 7, 11, 43. The only allegations in Plaintiff's amended complaint that imply state action are reference to a foreclosure sale and the list of related cases, including the suit to quiet title, and the only Defendant who could be characterized as a state actor is Judge Parker. *See* Dkt. No. 11 at 1-4, 6.

"The question here, as in all Fourteenth Amendment actions, is whether 'there is a sufficiently close nexus between the state and the challenged action ... so that the action may be fairly treated as that of the State itself.'" *Barrera,* 519 F.2d at 1169 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). To make that determination when the alleged state action occurred as the result of a legal proceeding, the Court focuses on the nature of the statutorily-created procedure and whether the state court acted *ex parte* such that the state itself is participating in the deprivation of property. *See Earnest v. Lowentritt,* 690 F.2d 1198, 1201 (5th Cir. 1982).

"The Supreme Court has characterized the private use of the state legal procedures for purposes of the Fourteenth Amendment as attributable to the state only in situations where the state has created a system which allows state officials to attach property on *ex parte* application." *Id.* (citing cases). "It is the absence of a full adversary adjudication prior to seizure of the property that triggers the constitutional due process

issue, and in these *ex parte*, prejudgment situations, the courts have found the state is itself participating in the deprivation of property, and the constitutional requirements of due process apply." *Id.*

The United States Supreme Court has held that foreclosure procedures implicate the Fourteenth Amendment only where there is at least some direct state involvement in the execution of the foreclosure or seizure. *See Fuentes v. Shevin*, 407 U.S. 67, 70-71 (1972). Conversely, "no state action is involved when the state merely opens its tribunals to private litigants." *Id.* at 1200. "Virtually all formal private arrangements assume, at some point, the supportive role of the state. To hold that the state, by recognizing the legal effect of those arrangements, converts them into state acts for constitutional purposes would effectively erase to a significant extent the constitutional line between private and state action and subject to judicial scrutiny under the Fourteenth Amendment virtually all private arrangements that purport to have binding legal effect." *Barrera*, 519 F.2d at 1170; *see also Earnest*, 690 F.2d at 1202 ("Any other conclusion would transform every foreclosure action between private parties into state action of constitutional dimensions.").

The United States Court of Appeals for the Fifth Circuit has held that "no significant state action is involved in non-judicial foreclosures under a deed of trust." *Barrera,* 519 F.2d at 1170; *see also Barrera*, 519 F.2d at 1172; *Bullock v. Resolution Trust Co.*, 918 F. Supp. 1001, 1014 (S.D. Miss. 1995) ("Non-judicial foreclosures of deeds of trust constitute private action authorized by contract and do not come within the scope of the due process clause.") (citing *Leininger v. Merchants & Farmers Bank*, 481

So.2d 1086, 1090 (Miss. 1986) (collecting both federal and state cases)).

The Texas foreclosure statute does not authorize or compel the power of sale under a deed of trust. Instead, its purpose and effect is to restrict the manner in which private parties, if they have bargained for the remedy, may exercise it. The statute does not aid, support, or encourage foreclosures under powers of sale but instead regulates the exercise of those powers and protects the debtor's property interest. *See Barrera*, 519 F.2d at 1170-71 (construing prior version of statute). Thus, the Texas legislative scheme concerning non-judicial foreclosure does not amount to state action that deprives the debtor of his interest in property. *See id.* at 1171.

Based on this governing authority, Plaintiff has failed to raise a substantial federal-law claim under the Takings and Due Process Clauses because, even based on Plaintiff's allegations, the foreclosure proceeding and the suit to quiet title, both of which determined ownership of the church's real property, do not qualify as state action.

Furthermore, even taking Plaintiff's allegations as true, the alleged actions of Defendants Collins, Sunnyvale Limited Partnership, Inc. and Superior Dynamics, Inc. that occurred before the foreclosure proceeding do not implicate state action. The actions of a private party may be attributed to the state only if two conditions are met: First, the deprivation must be caused by the exercise of some right or privilege created by the State or a rule of conduct imposed by the State or a person for whom the State is responsible. Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. *See Davis Oil Co. v. Mills,* 873 F.2d 774, 779 (5th

-14-

Cir. 1989) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

Neither of those conditions is met in this case. Even taking Plaintiff's allegations as true, it appears that it was the sale to Sunnyvale Limited Partnership, Inc. that deprived Plaintiff of the church's real property, not the subsequent foreclosure and quiet title actions in which it was determined that Plaintiff did not own the property. And, regardless, none of Plaintiff's allegations raise a substantial claim that Defendants Collins, Sunnyvale Limited Partnership, Inc. and Superior Dynamics, Inc. are state actors or that – even if jurisdiction over such a claim were not barred by the *Rooker-Feldman* doctrine, *see Truong*, 717 F.3d at 383 n.3 – there was joint participation by the state courts of Texas and Defendants Collins, Sunnyvale Limited Partnership, Inc. and Superior Dynamics, Inc. to deprive Plaintiff of the church property.

For all of these reasons, the undersigned concludes that Plaintiff's Fifth and Fourteenth Amendment Takings and Due Process Clause claims are so attenuated and unsubstantial as to be absolutely devoid of merit. Therefore, the Court does not have federal question jurisdiction under 28 U.S.C. § 1331 over Plaintiff's claims against all defendants based on alleged violations of the Takings and Due Process Clauses of the United States Constitution.

B.     Equal Protection Clause Claims

In his response to the show cause order, Plaintiff also argues that there is federal question jurisdiction under the equal protection clause for discrimination by the state district court based on religion. *See* Dkt. No. 12 at 8. The Equal Protection Clause directs that persons similarly situated should be treated alike. *See Plyler v. Doe*, 457

U.S. 202, 216 (1982). To state a claim under the Equal Protection Clause, a 42 U.S.C. § 1983 plaintiff must allege that a state actor intentionally discriminated against him because of membership in a protected class. *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999).

There is nothing in Plaintiff's amended complaint alleging that he was treated differently from similarly situated persons on the basis of his religion. *See* Dkt. No. 11. Neither does his response to Judge Parker's motion to dismiss explain how any conduct violated the Equal Protection Clause. *See* Dkt. 31. This claim, then, is likewise so attenuated and unsubstantial as to be absolutely devoid of merit, such that the Court does not have federal question jurisdiction under 28 U.S.C. § 1331 over Plaintiff's Equal Protection Clause claim.

Further, even if Plaintiff did raise an Equal Protection Clause claim that is sufficiently substantial to invoke Section 1331 jurisdiction, the only defendant who could be characterized as a state actor is Judge Tonya Parker, the presiding judge of the 116th District Court of Dallas County, Texas, and Judge Parker enjoys judicial immunity from Plaintiff's claims seeking damages.

Judges generally have absolute immunity for judicial actions taken within the scope of their jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349 (1978); *Davis v. Tarrant Cnty., Tex.,* 565 F.3d 214, 221-22 (5th Cir. 2009). "Judicial immunity can be overcome only by showing that the actions complained of were nonjudicial in nature or by showing that the actions were taken in the complete absence of all jurisdiction." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994). "A judge's acts are judicial in nature if they

are normally performed by a judge and the parties affected dealt with the judge in his judicial capacity." *Id.* at 285 (internal quotation marks omitted).

Plaintiff makes no specific allegations against Judge Parker in the amended complaint. The only references to Judge Parker in the amended complaint are to list her as a party and to identify her as one of the judges of the 116th District Court in the list of related lawsuits. *See* Dkt. No. 11. In the response to the show cause order, Plaintiff makes the general statement that "the Due Process Clause requires judges to recuse themselves in cases where the judge has a conflict of interest," *see* Dkt. No. 12 at 12, but there are no allegations that Judge Parker had a conflict of interest. And, even taking Plaintiff's allegations in his response to Judge Parker's motion to dismiss as true, none of the actions taken by Judge Parker of which Plaintiff complains could be characterized as "nonjudicial in nature," which would be required to deprive Judge Parker of judicial immunity. *Compare* Dkt. No. 31, *with Boyd*, 31 F.3d at 284-85.

III.   State-Law Claims

Even if the *Rooker-Feldman* doctrine did not bar jurisdiction over any of Plaintiff's claims, the Court lacks jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1332, and, even if the Court had jurisdiction over any of Plaintiff's federal-law claims, because the federal-law claims should all be dismissed, the Court should decline to exercise jurisdiction over Plaintiff's state-law claims

A.   Diversity Jurisdiction

As to Plaintiff's state-law claims, for the Court to have diversity jurisdiction under 28 U.S.C. § 1332, each plaintiff's citizenship must be diverse from each

defendant's citizenship, and the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332(a). The Court cannot exercise jurisdiction if any plaintiff shares the same citizenship as any defendant. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003).

Plaintiff argues in the response to the show cause order that there is diversity jurisdiction because one of the Defendants, Jane E. Brown, is a resident of Seattle, Washington. *See* Dkt. No. 12 at 8; *see also* Dkt. No. 23 at 2. But Plaintiff and all other Defendants are residents of Texas. *See* Dkt. No. 11. Because there is not complete diversity between Plaintiff and all defendants, the undersigned concludes that the Court does not have diversity jurisdiction under 28 U.S.C. § 1332 over any of Plaintiff's state-law claims.

B.     Supplemental Jurisdiction

Plaintiff's claims of fraud, conspiracy to commit fraud, and forgery sound in state law. Plaintiff uses the words "organized crime" in his amended petition, but those words refer to allegations based on the theory that the corporations owned or controlled by Defendant Collins could not acquire title to the property because they lost the right to do business in the State of Texas, *see* Dkt. No. 24 at 2, 11-13; Dkt. No. 31 at 7; Dkt. No. 39 at 7-8, which would be based on state law.

Supplemental jurisdiction is codified in 28 U.S.C. § 1367 and gives the district court discretion to exercise jurisdiction over state-law claims when: (1) federal-question jurisdiction under 28 U.S.C. § 1331 is proper and (2) the state-law claims derive from a common nucleus of operative facts. *See Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214,

221 (5th Cir. 2012). But, "[i]f a federal claim is too insubstantial to invoke federal question jurisdiction for the underlying case, and there is no diversity, there can be no supplemental jurisdiction of other claims." *Id.* (internal quotation marks omitted). That is the case here.

And, even if at least one of Plaintiff's federal-law claims for damages is only dismissed for failure to state a claim because of Judge Parker's judicial immunity, under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a state-law claim, where the district court has jurisdiction over a federal-law claim. To determine whether to exercise supplemental jurisdiction over a state-law claim, the Court considers whether: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. *See* 28 U.S.C. § 1367(c); *Hicks v. Austin I.S.D.*, 564 F. App'x 747, 748 (5th Cir. 2014); *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 n.4 (5th Cir. 2009). The Court is guided by these statutory factors set forth in section 1367(c) as well as the common law factors of judicial economy, convenience, fairness, and comity. *Brookshire Bros. Holding, Inc.*, 554 F.3d at 602. "The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Id.* This rule, however, is "neither mandatory nor absolute," and "no single factor is dispositive." *Id.*

Here, the Court should dismiss the state-law claims without prejudice either for lack of jurisdiction or under Section 1367(c). The undersigned has concluded that all claims over which the Court could have original jurisdiction should be dismissed. *See* 28 U.S.C. § 1367(c)(2). And this is not a case in which the Court has invested "a significant amount of judicial resources in the litigation," such that considerations of judicial economy and convenience weigh in favor of exercising supplemental jurisdiction over the state-law claims. *See id.* This case has been pending for only four months, during which time the Court has *sue sponte* questioned its jurisdiction but otherwise has taken no action on any substantive motions pending a determination of whether it has jurisdiction to do so. With no claim over which the Court could have original jurisdiction remaining, the state-law claims will necessarily dominate the litigation going forward. *See* 28 U.S.C. § 1367(c)(3). And this Court has not yet substantively addressed the state-law claims.

One adverse impact that, at one time, might have resulted from the dismissal of Plaintiff's state-law claims would be the inability to assert the claims in state court as a result of the running of the applicable statute of limitations. But the potential statute of limitations problem has been eliminated by the provisions of 28 U.S.C. § 1367(d), which tolls the running of limitations while the pendent claims have been pending in this court and for a period of thirty days after they are dismissed, unless state law provides for a longer tolling period. *See Lewis v. Law-Yone,* 813 F.Supp. 1247, 1257 (N.D. Tex. 1993). Plaintiff will have at least thirty days from the date of dismissal to file any state claims that fall under the supplemental jurisdiction of this court, which were

not time-barred prior to their submission to this court, in an appropriate state tribunal before state periods of limitation resume.

The undersigned recommends that the Court dismiss without prejudice the remaining state-law claims either for lack of jurisdiction or, even if at least one of Plaintiff's federal-law claims is only dismissed for failure to state a claim because of Judge Parker's judicial immunity, under 28 U.S.C. § 1367(c), because the Court declines to exercise supplemental jurisdiction.

## Recommendation

Plaintiff's claims in his First Amended Petition/Complaint to Contest and Set Aside Purported Ownership to Church Real Estate Property Based on Fraud, Forgery, Organized Crime, and Conspiracy to Commit Fraud [Dkt. No. 11] should be dismissed without prejudice as to all Defendants for lack of subject matter jurisdiction. Defendant Parker's Motion to Dismiss Under Federal Rules 12(b)(1) and 12(b)(6) [Dkt. No. 19] should be granted. Based on these jurisdictional rulings, Plaintiff's Ex Parte Original Petition and Application for Temporary Restraining Order and Temporary Injunction [Dkt. No. 46] should be denied, and all other remaining pending motions [Dkt. Nos. 17, 20, 23, 29, 30, 33, 41, 43, 44, & 45] likewise should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation

to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 7, 2014

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE